515 So.2d 436 (1987)
William J. GUSTE, Jr.
v.
Harry F. CONNICK.
No. 87-CC-2510.
Supreme Court of Louisiana.
November 19, 1987.
William Wessel, Victoria Bartels, Wessel, Bartels & Ciaccio, New Orleans, for applicant.
Kenneth Fonte, Golden, Fonte & Faulkner, Metairie, Charles Patin, Baton Rouge, for respondent.
PER CURIAM.
This suit arises out of a dispute over a TV ad aired by Mr. Harry Connick as part of his campaign for election as Attorney General for the State of Louisiana. Mr. William J. Guste, Jr. is the incumbent seeking reelection. The TV spot is of 30 seconds duration. The transcript is as follows:
Billy Guste wants you to believe that he's trying to collect $387 million from Texaco.
What he didn't tell you is that for 8 years he's failed to filed [sic] suit against Texaco.

*437 And, now he can't because they are in bankruptcy. But, he did manage to pay a former law partner of Edwin Edwards $1.5 million in legal fees.
He also didn't tell you that he's been leasing his land to Texaco for years.
Come on, Billy. Why won't you tell us how you're going to get all that money from Texaco.
Mr. Guste sought a preliminary injunction in the district court to stop the airing of this spot. He claimed that the spot was false in that a suit was filed by him as Attorney General for the State of Louisiana on February 14, 1980, a date three months shy of the eight years mentioned in the ad and that a conservatory action was filed in the United States Bankruptcy Court in the Texaco matter in February, 1987. He also claimed that the $1.5 million in legal fees paid to a former law partner of Governor Edwin Edwards was inaccurate because that attorney (William Broadhurst) had shared those fees with another attorney (Ernest Eldred). The facts as established by the affidavit of Ernest Eldred are these. As part of a settlement agreement reached in 1981, Texaco agreed that it would not oppose an award by the district court to the state of attorney fees and litigation expenses up to 1.5 million dollars. The state had already been billed some $744,000 by the Eldred and Broadhurst firms and had paid those firms significant portions of the amounts billed.[1] Pursuant to the judgment entered in the case, Texaco then paid the state $626,853.41 for attorney fees. Additionally, and by agreement of the parties, Texaco made a separate payment for attorney fees in the amount of $873,000, plus interest. That amount was paid into the registry of the court, and then divided "equitably" between the Eldred and Broadhurst firms. Thus, the total amount of attorney fees and litigation expenses paid by Texaco pursuant to the settlement agreement was $1,499,853.41, plus an amount for interest that is not specified in the record before us.
On the other hand, Mr. Connick contended that the allegations in the TV spot were not false but rather constituted pertinent information about Mr. Guste that the public was entitled to know during his campaign for reelection. He argued that the granting of a preliminary injunction in this case would be a "prior restraint" of free speech in violation of his first amendment rights.
After a hearing, the trial judge ordered Mr. Connick "to cease and desist in his T.V. spot" based on the allegations that "Guste saw to it that Governor Edwards' former law partner was paid $1,500,000.00 for attorney's fees" and that the "Attorney General has not filed suit in the Texaco matter for 8 years." He found that the attorney fees were in fact paid by Texaco pursuant to a court order and that Edwards' former law partner received far less than the $1,500,000 in fees paid. He also found that Guste had filed a conservatory action in February, 1987 in the bankruptcy court in the Texaco proceedings.[2] The court noted that, "But I don't believe, from the import of this there was any malice on Mr. Connick's behalf. I think what he said, what he believes to be correct and this substantially is incorrect."
Mr. Connick's application to the court of appeal for supervisory writs was denied. Upon application to this court, we granted certiorari to review the correctness of the ruling of the trial judge and set the matter for an immediate hearing. After a hearing, we vacated and reversed the judgments of the courts below, dissolving the injunction and dismissing the case. We noted that reasons for judgment would be released on the following day.
In a case of this kind, courts do not concern themselves with the truth or validity *438 of the publication. An injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on first amendment rights. Organization For A Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). However, the protection even as to previous restraint is not absolutely unlimited but the limitation has been recognized only in exceptional cases. Near v. Minnesota ex rel Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The United States Supreme Court has also stated that: "Any prior restraint on expression comes to this Court with a `heavy presumption' against its constitutional validity. [Citations omitted.] Respondent thus carries a heavy burden of showing justification for the imposition of such a restraint." Organization, 402 U.S. at 419, 91 S.Ct. at 1578. In Wilson v. Superior Court of Los Angeles County, 13 Cal.3d 652, 660, 119 Cal. Rptr. 468, 532 P.2d 116 (1975), the Supreme Court of California in a case similar to the instant case stated in dissolving a preliminary injunction:
We do not intend to imply approval of the dubious tactics employed by petitioner in the Newsletter or to suggest that prior restraint upon publication can never be justified. The decisions recognize that prior restraints may be imposed under some extraordinary circumstances. For example, it has been said that the government may prohibit the disclosure of military secrets in time of war and prevent the utterance of words that may have the effect of force. [Citations omitted.] Furthermore, an injunction restraining speech may issue in some circumstances to protect private rights [citations omitted] or to prevent deceptive commercial practices [citations omitted]. However, we have not discovered any case upholding the power of a court to restrain publication of a statement regarding the official conduct of a public officer on the ground that the statement was not wholly true or was presented in a deceptive manner. The judiciary has been ever mindful of Thomas Jefferson's aphorism that "error of opinion may be tolerated when reason is free to combat it."
In the instant case, without passing upon the truth or validity of the TV advertisement, we find the preliminary injunction violated Mr. Connick's rights of freedom of speech under the first amendment. Mr. Guste did not carry his heavy burden of showing justification for the imposition of such a restraint. We have discovered no cases nor have any been pointed out to us where an injunction has been issued restraining the publication of statements made during a political campaign regarding the official conduct of a public officer on the ground that the statement was not wholly true or was presented in a deceptive manner.
It is for these reasons that we reversed the judgment of the trial court and dissolved the injunction.
LEMMON, J., concurs and assigns reasons.
COLE, J., dissents and assigns reasons.
LEMMON, Justice, concurring.
I am not prepared to state that a court should never enjoin the use of false and deceptive comments in political advertising. However, the comments found to be substantially incorrect by the trial judge in the present case do not approach the level of blatant falsity or public deception that might warrant our considering whether to balance such extraordinary circumstances against the constitutional considerations.
COLE, Justice, dissenting.
Factual determinations of falsity have been made in the trial court based upon the evidence adduced. The court of appeal found no error. This court, by refusing to determine whether the statements were true or false, left this holding of the lower courts undisturbed. It is my view that false publications are not constitutionally protected and injunctive relief as to future publication is proper. Since a judicial determination the statements are false has been made, for Connick to publish them in *439 the future would amount to a knowing communication of falsehoods. I do not believe the constitution protects the ongoing publication of statements that have been judicially determined to be false. As the United States Supreme Court stated in Garrison v. State of Louisiana, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964):
That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. * * *" Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection. (Citation omitted.)
The result of today's decision is that a politician will be able to broadcast knowingly false statements which, under Garrison, are entitled to no protection under the First Amendment. Because I cannot countenance such a result, I respectfully dissent.
NOTES
[1] The affidavit of Ernest Eldred, which was attached to Guste's petition, avers that the Eldred firm has billed and been paid by the state the sum of $259,894.97, and has billed but not been paid the sum of $7,432.38. The affidavit further states that the Broadhurst firm has billed and been paid by the state the amount of $328,208.44, and has billed but not been paid the sum of $149,265.16.
[2] The trial judge also found that the "lease as far as Texaco matter is concerned, the question of conflict of interest, is correct."